UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

AMERICAN CIVIL LIBERTIES          )
UNION OF TENNESSEE, (ACLU OF      )
TENNESSEE, INC.), LEEANN G.       )
ANDERSON, STEVE DIXON CATES,      )
JOAN G. HILL, DAWN WEISS          )
MONTGOMERY, LEON RICHARD          )
NUELL, JOSEPH DONALD SHAW,        )
and DALE A. TIPPS,                )
                                  )
        Plaintiffs,               )
                                  )
v.                                )      No. 3:02-0396
                                  )      Judge Echols
RUTHERFORD COUNTY, TENNESSEE,     )
and NANCY R. ALLEN, in her        )
official capacity as County       )
Executive,                        )
                                  )
        Defendants.               )


<u>MEMORANDUM</u>


        Pending before the Court is Plaintiffs' Motion to Lift Stay of

All Proceedings and For an Order Advancing Trial on the Merits on

Plaintiffs' Renewed Motion for Permanent Injunction (Docket Entry

No. 53), to which Defendants have responded in partial opposition

(Docket Entry Nos. 51 & 59).[1]

---

        [1]Plaintiffs have not filed a separate motion renewing their
request for a permanent injunction. Instead, Plaintiffs' renewed
request appears in their brief filed in support of their Motion to
lift the stay in this case and to advance the trial on the merits.
(Docket Entry No. 54 at 5). Plaintiffs previously filed a Motion
for Permanent Injunction (Docket No. 49), which the Court denied
without prejudice when it granted Defendants' Motion to stay all
proceedings in this case. (Docket Entry No. 52).

1

On April 18, 2002, Plaintiffs initiated this action against Defendants under 42 U.S.C. § 1983, challenging the posting of the Ten Commandments in a display entitled "Foundations of American Law and Government" in the Rutherford County Courthouse.  Plaintiffs, a civil liberties organization in Tennessee with Rutherford County members and individual Rutherford County residents, claimed that posting the Ten Commandments violated their rights guaranteed by the Establishment Clause of the First Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment to the United States Constitution.

Specifically, Plaintiffs alleged that the Ten Commandments is a religious document and that Defendants' purpose in posting the document on the Courthouse wall was to promote religion.  Further, Plaintiffs alleged that adding other historical documents to the display was merely a feeble attempt by Defendants to mask the real religious intent of displaying the Ten Commandments.  In addition, Plaintiffs contended that the display of the Ten Commandments served no secular purpose and constituted an endorsement of religion by a governmental agency.  Plaintiffs sought a declaration that the display was unconstitutional, as well as preliminary and permanent injunctive relief enjoining Defendants from continuing their display of the Ten Commandments.  Plaintiffs also sought an award of their costs, including reasonable attorney fees, pursuant to 42 U.S.C. § 1988.

2

On March 6, 2002, the Court held a preliminary injunction hearing and subsequently issued an Order and lengthy Memorandum granting Plaintiffs' request for a preliminary injunction. (Docket Entries No. 33 & 34). Therein, the Court ordered Defendants to remove the "Foundations of American Law and Government" display from the Rutherford County Courthouse immediately or alternatively, to remove the Ten Commandments from the display immediately. (<u>Id.</u>) The Court subsequently denied Defendants' Motion to Alter or Amend Judgment and/or for Reconsideration of the Court's Order and accompanying Memorandum entered on June 21, 2002. (Docket Entry Nos. 42 & 43).

Later, at the request of Defendants, the Court stayed the case pending appellate resolution of a similar case styled <u>ACLU of Kentucky v. McCreary County</u>. (Docket Entry No. 52). Decisions have since been rendered in that case by the Sixth Circuit, <u>ACLU of Kentucky v. McCreary County</u>, 354 F.3d 438, 456 (6th Cir. 2003), and the United States Supreme Court, <u>McCreary County v. ACLU of Kentucky</u>, 125 S. Ct. 2722 (2005)(hereinafter "<u>McCreary County</u>").

Now that the <u>McCreary County</u> case has been decided, Plaintiffs move to lift the stay and advance the trial on the merits. (Docket Entry No. 53). Defendants agree there is no reason to continue the stay in this case. (Docket Entry No. 59). Therefore, the stay in this case will be lifted. Plaintiffs also seek to convert the previously entered preliminary injunction into a permanent

injunction (Docket Entry No. 53), a request which Defendants oppose. (Docket Entry No. 59).

## II. <u>FINDINGS OF FACT</u>

Citing Federal Rule of Civil Procedure 65(a)(2), Plaintiffs assert that the Court can determine the propriety of Plaintiffs' requested permanent injunction solely on the basis of the record before the Court and the evidence presented at the preliminary injunction hearing. (Docket Entry No. 54 at 4). Defendants apparently do not disagree. This Court previously has made detailed findings regarding the posting of the Ten Commandments at the Rutherford County Courthouse and familiarity with those findings (which are published, <u>ACLU of Tennessee v. Rutherford County</u>, 209 F. Supp.2d 799 (M.D. Tenn. 2002)) is assumed. For present purposes, the facts underlying this dispute can be recounted as follows.

On June 17, 1999, the Rutherford County Commission ("Commission") adopted by oral vote a resolution proclaiming the Commission's support of the Ten Commandments and its commitment to defend the right to display the document. The resolution also called upon the "God of Heaven to preserve the peace He has extended to them and to protect them from ills which come to those who ignore His Law." (Docket Entry No. 1, Exh. D). Apparently, no effort was made to post such a document in a public building at that time.

4

When the Commission met on March 14, 2002, however, the subject was raised again by one of the Commissioners who referred to the Commission's prior resolution in support of defending the right to display the Ten Commandments. He equated the right to defend the display of the Ten Commandments with an endorsement of the posting of the document and urged the Commission to direct the Defendant County Executive to display the Ten Commandments at the Courthouse. After lengthy debate, the Commission passed a second resolution to post a plaque of the Ten Commandments at the Courthouse. (Docket Entry No. 1, Exh. A).

An amendment was subsequently offered to that resolution which provided that "in addition to the Ten Commandments being posted other historical documents may be considered." (Id.) The stated purpose of this amendment was to require the Steering Committee to consider other historical documents to be displayed with the Ten Commandments to ensure the constitutionality of posting the Ten Commandments. Following more discussion, however, the motion was withdrawn, and a second amendment was made "to wait sixty days to post the Ten Commandments in the Courthouse." (Id.) This motion failed.

The Commission ultimately passed a third amendment to the second resolution which required the County Executive to post the Ten Commandments in the Courthouse on the thirty-fifth day and the Steering Committee to make recommendations regarding other historical documents to be displayed in the Courthouse. (Id.) The

5

resolution required the County Executive to post the Ten Commandments regardless of whether any other historical documents would be posted simultaneously with the Ten Commandments. (Id.)

The Commission next considered the subject of posting the Ten Commandments at its meeting on April 11, 2002. At this meeting, the Commission passed a third resolution pertaining to the posting of the Ten Commandments which read:

### RESOLUTION

It is recognized by this Commission that many documents, taken as a whole, have special historical significance to our community, our county, and our country. Some of these documents include, but are not limited to the Preamble to the Tennessee Constitution, our National Motto, our National Anthem, the Declaration of Independence, the Mayflower Compact, the Bill of rights [sic] to the United States Constitution, the Magna Carta and the Ten Commandments.

A sense of historical context, civic duty and responsibility, and the general appreciation and understanding of the law of this land are all desirable components of the education of the citizens of this country. We believe these above named documents positively contribute to the educational foundations and moral character of the citizens of this county. We do not dispute the fact that there may be other documents, speeches, letters, and writings that are equally important as those mentioned above, but it is our opinion that these above mentioned documents, taken as a whole, are valuable examples of documents that may instill qualities desirable of the citizens of this county, and have had particular historical significance to the development of this country.

For all of these reasons, BE IT RESOLVED by the Rutherford County Board of Commissioners that we do support these

6

historical documents, and also support the public display of the above documents.

RESOLVED this 11th day of April, 2002.

(Docket Entry No. 1, Exh. B).

Pursuant to that resolution, on April 18, 2002, the County Executive installed a display entitled "Foundations of American Law and Government" in the first floor main lobby of the Rutherford County Courthouse. The display was located across from the Courthouse stairs and elevator and anyone entering the Courthouse from the front door was required to pass the display. The display consisted of documents mounted in the same-size frames, including: (1) an explanation of each document in the display and its significance entitled "Foundations of American Law and Government Display," (2) the Mayflower Compact, (3) the Declaration of Independence, (4) the Ten Commandments, (5) the Magna Carta, included in 2 frames, (6) the lyrics of The Star Spangled Banner, (7) the Preamble to the Tennessee Constitution, (8) the Bill of Rights of the United States Constitution, and (9) a picture of Lady Justice.

On the day the display was installed, Plaintiffs, who regularly use the Courthouse to transact public business, filed this lawsuit. As discussed above, this Court subsequently entered a preliminary injunction ordering Defendants to remove the "Foundations of American Law and Government" display from the Rutherford County Courthouse immediately or alternatively, to remove the Ten Commandments from the display immediately. The

7

Court found that even though the primary effect of the display was not to endorse religion, the posting of the display nonetheless violated the Supreme Court's decision in <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971), because the Commission acted with a wholly religious, non-secular purpose in posting the "Foundations of American Law and Government" display in the Rutherford County Courthouse.

### III. <u>PERMANENT INJUNCTION STANDARD</u>

The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiffs must show actual, as opposed to a likelihood of, success on the merits. <u>Amoco Prod. Co. v. Village of Gambell</u>, 480 U.S. 531, 546 n.12 (1987). Hence, the Court must consider four factors when determining whether to grant or deny a permanent injunction:

1. the plaintiff's success on the merits;

2. whether the plaintiff may suffer irreparable harm absent the injunction;

3. whether granting the injunction will cause substantial harm to others; and

4. the impact of an injunction upon the public interest.

<u>Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tenn.</u>, 274 F.3d 377, 400 (6th Cir. 2001)(setting forth preliminary injunction standards).

### IV. <u>CONCLUSIONS OF LAW</u>

Prior to reaching Plaintiffs' arguments on their request to convert the preliminary injunction into a permanent injunction, the

8

Court will review the Supreme Court's decision in <u>McCreary County</u>.
The Court will also address Defendants' contention that, in light
of the <u>McCreary County</u> ruling, this Court erroneously found that
the Commission acted with a non-secular purpose in erecting the
display. The Court will also address a new assertion raised by
Defendants – that Plaintiffs lack standing to pursue this suit.

A.    **The Supreme Court's *McCreary County* Decision**

In <u>McCreary County</u>, two Kentucky counties – McCreary and
Pulaski – displayed "large, gold-framed copies" of the Ten
Commandments in their respective courthouses. 125 S. Ct. at 2728.
The displays were placed in high traffic areas where they were
"readily visible" to persons who utilized the courthouses to
conduct public business, such as obtaining a driver's license,
registering cars, registering to vote, and paying local taxes.[2]
<u>Id.</u>

The ACLU of Kentucky brought suit against both counties for
alleged violations of the Establishment Clause. <u>Id.</u> at 2729.
After initiation of the lawsuit, but before a ruling on the motion
for injunctive relief, both counties authorized second displays to
replace what had been stand-alone displays of the Ten Commandments.

---

[2]At the ceremony to hang the display in the Pulaski
courthouse, the Judge-Executive, accompanied by his pastor,
presided and told "the story of an astronaut who became convinced
'there must be a divine God' after viewing the Earth from the
moon." <u>McCreary County</u>, 125 S. Ct. at 2728. The pastor said that
the display was "'one of the greatest things the judge could have
done to close out the millennium.'" <u>Id.</u>

<u>Id.</u> In so doing, the counties formulated nearly identical resolutions

> reciting that the Ten Commandments are "the precedent legal code upon which the civil and criminal codes of . . . Kentucky are founded," and stating several grounds for taking that position: that "the Ten Commandments are codified in Kentucky's civil and criminal laws"; that the Kentucky House of Representatives had in 1993 "voted unanimously . . . to adjourn . . . 'in remembrance and honor of Jesus Christ, the Prince of Ethics'"; that the "County Judge and . . . magistrates agree with the arguments set out by Judge [Roy] Moore" in defense of his "display [of] the Ten Commandments in his courtroom"; and that the "Founding Father[s] [had an] explicit understanding of the duty of elected officials to publicly acknowledge God as the source of America's strength and direction."

<u>Id.</u>

The counties then installed expanded displays that included not only framed copies of the Ten Commandments, but also eight other documents in smaller frames, "each either having a religious theme or excerpted to highlight a religious element." <u>Id</u>.[3]

Despite the change from the stand-alone displays to displays of the Ten Commandments among other purportedly foundational

---

[3]The documents included a passage from the Declaration of Independence; the Preamble to the Constitution of Kentucky; the national motto, "In God We Trust"; a page from the Congressional Record of February 2, 1983, proclaiming the Year of the Bible and including a statement of the Ten Commandments; a proclamation by President Abraham Lincoln designating April 30, 1863, a National Day of Prayer and Humiliation; an excerpt from President Lincoln's "Reply to Loyal Colored People of Baltimore upon Presentation of a Bible"; a proclamation by President Ronald Reagan marking 1983 the Year of the Bible; and the Mayflower Compact. 125 S. Ct. at 2729.

10

documents, the district court granted the motion for preliminary injunction and ordered the displays removed immediately. Id. at 2730. The counties then changed counsel and erected a third display in each courthouse entitled "The Foundations of American Law and Government Display."[4] Id. at 2730-31. It was only after the ACLU sought to enjoin this third display that the counties attempted to articulate a secular purpose for the displays. Id. at 2731. Nevertheless, considering the history of the litigation and the Ten Commandments' foundational value as "'a religious, rather than secular purpose,'" the district court expanded the injunction to enjoin the posting of all three displays. Id.

A divided panel of the Sixth Circuit affirmed.[5] ACLU of Kentucky v. McCreary County, 354 F.3d 438 (6th Cir. 2003). A petition for rehearing en banc was denied. ACLU of Kentucky v. McCreary County, 361 F.3d 928 (6th Cir. 2004). The Supreme Court granted certiorari and, ultimately, a divided Supreme Court affirmed the granting of injunctive relief.[6] 125 S. Ct. 2722.

_____

[4]No new resolution authorized the third display, and prior resolutions authorizing the display of the Ten Commandments were not formally repealed. 125 S. Ct. at 2730.

[5]Judge Clay authored the panel opinion, and Judge Gibbons concurred in the result and authored a separate opinion to emphasize that she expressed no opinion as to whether the displays violate the effect/endorsement prong of Lemon. 354 F.3d at 462. Judge Ryan dissented, writing that "[t]he defendants' displays comport with the requirements of the Constitution in every respect[.]" Id. at 463.

[6]Justice Souter delivered the opinion of the Court, in which Justices Stevens, O'Connor, Ginsburg, and Breyer joined. Justice O'Connor filed a concurring opinion. Justice Scalia filed a

11

Preliminarily, the majority found the original stand-alone Ten Commandments displays similar to the display held unconstitutional in <u>Stone v. Graham</u>, 449 U.S. 39 (1980) (per curiam), because there was nothing to indicate an objectively secular purpose and the displays "set out a text of the Commandments as distinct from any traditionally symbolic representation, and each stood alone, not part of an arguably secular display." <u>McCreary County</u>, 125 S. Ct. at 2738. Thus, the majority found that "[t]he reasonable observer could only think that the Counties meant to emphasize and celebrate the Commandments' religious message." <u>Id.</u>

The majority of the Court found the second, expanded displays similarly problematic because the additional documents "highlighted references to God as their sole common element," and "the display[s'] unstinting focus was on religious passages, showing that the Counties were posting the Commandments precisely because of their sectarian content." <u>Id</u>. at 2739.

The Court's majority found that the third displays, "Foundations of American Law and Government," also evidenced a religious purpose because when the new displays were posted, the prior resolutions were not repealed, no new resolutions authorizing the displays were enacted, and the displays were changed only upon the substitution of counsel which suggested a "litigating position" that no reasonable observer could view as a change of position from

_____

dissenting opinion, in which Chief Justice Rehnquist and Justice Thomas joined, and in which Justice Kennedy joined in part. 125 S. Ct. at 2727.

secular to non-secular. _Id_. at 2739-41. The majority summarized: "If the observer had not thrown up his hands, he would probably suspect that the Counties were simply reaching for any way to keep a religious document on the walls of courthouses constitutionally required to embody religious neutrality." _Id._ at 2741.

**B.** **Whether the Court Should Reconsider Its Ruling as to the Purpose of the Rutherford County Display**

In their Response to Plaintiffs' Motion (Docket Entry No. 59), Defendants contend that after the _McCreary County_ decision, this Court should reverse its previous ruling and find the "Foundations" display constitutional under the purpose prong of the _Lemon_ test. (Docket Entry No. 59 at 9-13). According to Defendants, _McCreary County_ requires the Court to ignore statements made by the Rutherford County Commissioners who voted in favor of the resolutions requiring the posting of the displays because, among other reasons, these Commissioners may not have meant what they said due to election year pressures, behind the scenes vote-swapping, or inability to articulate what they meant. (Docket Entry No. 59 at 10). Not only that, but Defendants contend _McCreary County_ requires the Court to ignore the entire historical context of the Ten Commandments displays in Rutherford County and look solely to the text of the most recent resolution passed by the Commission when applying _Lemon's_ purpose test. (_Id._ at 12).

But the Supreme Court does not teach in _McCreary County_ that the Court must "cut context out of the enquiry, to the point of ignoring history, no matter what bearing it actually had on the

13

significance of current circumstances." 125 S. Ct. at 2735. In responding to an argument by the Kentucky counties very similar to the one advanced by Defendants here, the McCreary County majority emphasized that context is key, and history cannot be ignored:

> [The Counties] argue that purpose in a case like this one should be inferred, if at all, only from the latest news about the last in a series of governmental actions, however close they may all be in time and subject. But the world is not made brand new every morning, and the Counties are simply asking us to ignore perfectly probative evidence; they want an absentminded objective observer, not one presumed to be familiar with the history of the government's actions and competent to learn what history has to show[.] The Counties position just bucks common sense: reasonable observers have reasonable memories, and our precedents sensibly forbid an observer "to turn a blind eye to the context in which [the] policy arose."

Id. at 2637 (citing Santa Fe Indep. Sch. Dist. v. Doe, at 315).

In the case at hand, in its Memorandum addressing Defendants' Motion to Reconsider the granting of the preliminary injunction, the Court thoroughly reviewed the history surrounding the posting of the Ten Commandments at the Rutherford County Courthouse. (Docket Entry No. 42). Summarizing, the Court found that Defendants did not obviate their wholly religious purpose in repealing the June 1999 and March 2002 resolutions as evidenced by the facts that the "rescinding resolution" of May 16, 2002, was enacted at the specific formal request of outside counsel and was accompanied by directions to the Commissioners not to discuss or debate the resolution. The Court therefore determined that the

14

Commission's rescinding resolution of May 16, 2002, did not reflect a sincere change of motives or intent and was nothing more than a hollow attempt by Defendants to legitimate action that the Court had determined to be violative of the First Amendment.

The Court will not ignore this relevant historical evidence, just as the Supreme Court in McCreary County did not ignore the history surrounding the posting of the Ten Commandments in the Pulaski and McCreary county courthouses. 125 S. Ct. at 2740-41 (finding that, under the facts presented, "[n]o reasonable observer could swallow the claim that the Counties had cast off the objective so unmistakable in the earlier displays.").[7] The Supreme Court clearly advised:

> [P]urpose needs to be taken seriously under the Establishment Clause and needs to be understood in light of context: an implausible claim that governmental purpose has changed should not carry the day in a court of law any more than in a head with common sense.

Id. at 2741. In light of this admonishment, Defendants' position that the Court should ignore the history and context of the current "Foundations" display cannot be seriously considered. McCreary County does not require the Court to reverse its previous ruling that the display violates the purpose prong of the Lemon test, and

---

[7]See also ACLU of Kentucky v. McCreary County, 354 F.3d 438, 456 (6th Cir. 2003)(affirming district court's order requiring the removal of the Ten Commandments displays from Kentucky courthouses and stating that "[t]his Court . . . has held that a government's earlier policies or practices involving religious speech are relevant when determining the primary purpose behind a revised policy that ostensibly is designed to address earlier violations of the Establishment Clause.")

15

Defendants have presented the Court with no new evidence to persuade the Court its original finding was erroneous.

**C.   Defendants' Argument that Plaintiffs Lack Standing**

Plaintiffs in this action are individual users of the Rutherford County Courthouse and the ACLU, which is an organizational unit purporting to act on behalf of the individual Plaintiffs. Defendants assert that Plaintiffs lack standing[8] to pursue this action because they allege only a psychological injury from viewing something with which they disagree. According to Defendants, Plaintiffs therefore have alleged no injury-in-fact. (Docket Entry No. 59 at 15-16).

Standing is a jurisdictional requirement because if a plaintiff does not have standing to bring a claim, a federal court is without power to rule on the issues presented. See Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc., 454 U.S. 464, 475-76 ("[O]f one thing we may be sure: Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.") The standing doctrine incorporates both constitutional requirements and prudential considerations, and serves to limit federal jurisdiction to "cases and controversies" as required by Article III of the U.S.

---

[8]Even though Defendants raise the standing argument for the first time at this late stage of the proceedings, the argument has not been waived. "Standing is jurisdictional and not subject to waiver." Lewis v. Casey, 518 U.S. 343, 349 n.1 (1996); see also Stupak-Thrall v. Glickman, 346 F.3d 579, 583 (6th Cir. 2003)("Failure to establish standing is a jurisdictional defect.").

16

Constitution. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559-61 (1992). The test for standing is as follows:

> First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Id</u>.

In support of their position that Plaintiffs lack standing, Defendants rely on Judge Easterbrook's dissenting opinion in <u>Books v. Elkhart County, Ind.</u>, 401 F.3d 857 (7th Cir. 2005). There, Judge Easterbrook opined that the plaintiff had no standing to complain about a "Foundations of Law" display which contained the Ten Commandments where the plaintiff merely alleged that he visited the building housing the display once a year to pay the excise tax on his car and had not changed his conduct since the display was installed. <u>Id</u>. at 870-71.

This Court is not persuaded by Judge Easterbrook's out-of-circuit dissent, particularly given the Sixth Circuit's announcements in this area. For example, in <u>Adland v. Russ</u>, 307 F.3d 471 (6th Cir. 2002), the Sixth Circuit found the plaintiff had standing to challenge a Ten Commandments monument on the grounds of the Kentucky state capitol where the individual

17

plaintiff frequently traveled to the state capital to engage in political advocacy for a number of organizations and would endure unwelcome exposure to the monument. The Sixth Circuit found that the organizational plaintiff (the ACLU of Kentucky) also had standing because "'(a) its members otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit.'" <u>Id</u>. at 478 (quoting <u>Hunt v. Wash. State Apple Adver. Comm.</u>, 432 U.S. 333, 343 (1977)).

More recently, and more analogous to the facts of this case, the Sixth Circuit found standing existed to contest the display of the Ten Commandments in a judge's courtroom in <u>ACLU of Ohio v. Ashbrook</u>, 375 F.3d 484, 488-490 (6th Cir. 2004), where the ACLU of Ohio identified a lawyer as a representative plaintiff who traveled to, and practiced in, the judge's courtroom. Because the lawyer would come into direct unwelcome contact with the Ten Commandments display and its removal would prevent further injury to him, he had standing. <u>Id.</u> at 490. The ACLU had standing because the "interest protected by this challenge on [the lawyer's behalf] is, no doubt germane to the ACLU-Ohio's stated purpose, the preservation of the constitutional separation of church and state." <u>Id</u>.

Likewise, in this case, the individual Plaintiffs are all residents of Rutherford County who find a display of the Ten Commandments "objectionable," and who will come into direct contact

18

with the display in the Rutherford County Courthouse when they transact necessary public business such as obtaining and renewing licenses, registering property, paying local taxes, registering to vote and voting. (Verified Complaint ¶ 5).[9] The ACLU of Tennessee, the organizational Plaintiff, is a membership organization in Tennessee "whose purpose is vindicating citizen's constitutional rights." (Id. ¶ 4). Under ACLU of Ohio, the individual Plaintiffs, as well as the organizational Plaintiff, have standing to challenge the posting of the Ten Commandments in the Rutherford County Courthouse.

**D.** **Plaintiffs' Request to Convert the Preliminary Injunction into a Permanent Injunction**

Plaintiffs move to convert the preliminary injunction issued by the Court on June 21, 2002, into a permanent injunction which would prohibit "Defendants and their officers, agents, servants, employees and attorneys . . . from posting or attempting to post in any of the public buildings of Rutherford County, Tennessee any display of the Ten Commandments, by themselves or identically or substantially in the form of the display that this Court ordered taken down by its Memorandum and Order granting a preliminary injunction dated June 21, 2002." (Docket Entry No. 49 at 1). Plaintiffs, citing Adland, remind that the Sixth Circuit views with skepticism after-the-fact attempts by defendants "merely to avoid

---

[9]One of the Plaintiffs is also a practicing attorney in Rutherford County, although it is unclear from the record whether he regularly litigates in the Courthouse.

Establishment Clause liability rather than to actually further legitimate secular purpose." 307 F.3d at 482. And, according to Plaintiffs, since this Court already has found that these Defendants' rescinding resolution was merely a hollow attempt to legitimize their religiously-motivated actions, a permanent injunction is necessary to prevent Defendants from again acting in violation of the Constitution.

Defendants respond that Plaintiffs' requested injunction is overly broad and that Plaintiffs cannot demonstrate that the injury they suffered will be continuing, as Plaintiffs have presented absolutely no evidence suggesting that Defendants will again act with an unconstitutional purpose in attempting to post the Ten Commandments in public buildings. (Docket Entry No. 59).

While skepticism of after-the-fact justification is necessary under Adland and McCreary County, it does not follow that past illegality is incapable of correction. In fact, in Adland, while permanently enjoining a state legislative resolution which would relocate a monument inscribed with the Ten Commandments to a permanent place on the state capitol grounds,[10] the Sixth Circuit

---

[10]The Sixth Circuit issued the permanent injunction because (1) the Commonwealth intended to display an inherently religious document; (2) the display would be on the grounds of the State Capitol; (3) the format of the monument emphasizes the Ten Commandment's religious directives; (4) the Ten Commandments monument would have been the largest monument in the display; (5) the intended "cultural and historical display" set forth in the statute lacked a readily discernible unifying theme; and (6) the resolution, which would have been posted with the monument, amplified the religious message. Adland v. Russ, 307 F.3d at 489.

emphasized that it was "not hold[ing] that the Commonwealth of Kentucky can never display the Ten Commandments or this monument in particular." 307 F.3d at 489. "To the contrary," wrote the Court, "we believe that the Supreme Court's opinion in <u>Stone</u> and Justice Stevens' statements in <u>Allegheny</u> not only acknowledge that the Ten Commandments may be constitutionally displayed, they provide considerable guidance how they can be displayed." <u>Id.</u> The Court was "confident that with careful planning and consideration, and perhaps consultation with the plaintiffs, the Commonwealth can permissibly display the monument in question." <u>Id.</u> at 490.

More recently, the Supreme Court majority in <u>McCreary County</u> made it clear that counties may purge themselves of a constitutionally impermissible purpose:

> In holding the preliminary injunction adequately supported by evidence that the Counties' purpose had not changed at the third stage, we do not decide that the Counties' past actions forever taint any effort on their part to deal with the subject matter . . . . It is enough to say here that the district courts are fully capable of adjusting preliminary relief to take account of genuine changes in constitutionally significant conditions.

<u>McCreary County</u>, 125 S. Ct. at 2741. As the Sixth Circuit reads the <u>McCreary County</u> decision, the majority emphasized that the district court should be wiling to modify its judgment should the county later demonstrate a predominately secular purpose. <u>ACLU of Kentucky v. Mercer County</u>, 432 F.3d at 632-33 (6th Cir. 2005)(discerning that the <u>McCreary County</u> decision "focused on the

21

evolution of the displays, and the Court was careful not to extend its holding any further" by indicating it was not deciding that past actions forever taint future actions).

Stripped to its essence, the instant Plaintiffs' argument in support of their Motion seeking a permanent injunction is that because of the Commission's past actions, Rutherford County can never post displays of the Ten Commandments in its Courthouse or other public buildings. That argument cannot prevail, as recently evidenced by the Sixth Circuit's post-McCreary County decision in Mercer County. In the Mercer County case, the Sixth Circuit upheld the district court's grant of summary judgment in the county's favor and the dismissal of the ACLU's complaint challenging the posting of the "Foundation of Law and American Government" display, which contained a copy of the Ten Commandments, in the Mercer County courthouse. While finding that the challenged "display itself is identical in all respects to the third and final displays found unconstitutional in McCreary County," the Sixth Circuit found that the Mercer County courthouse display was constitutional because unlike the McCreary County display, the "predominant purpose of the display . . . is secular" and it "lacks a similar sectarian pedigree." Mercer County, 432 F.3d at 631; see also ACLU of Ohio v. Bd. of Comm'rs, Lucas County, No. 3:02CV7565, 2006 WL 1023820 at *6 (N.D. Ohio April 18, 2006)("In light of the Court's application of the purpose prong in McCreary, displays of the

Decalogue, even in a courthouse, if undertaken without a religious purpose, may be constitutionally acceptable.").

Combined, McCreary County and Mercer County teach that (1) a public body may post the Ten Commandments in a public building if the display's purpose is secular and the display does not have the primary purpose of advancing or endorsing religion, and, (2) most pertinent to the issues at hand, even if the same public body previously attempted to post the Ten Commandments in an unconstitutional manner, it may be able to post the Ten Commandments in the future in a constitutionally permissible manner. While recent cases provide a "road map" to follow in permissibly displaying documents with religious content, these Rutherford County Defendants must show that they have purged themselves of their original sectarian purpose relating to the posting of the Ten Commandments. McCreary County does not suggest this cannot be done. Indeed, the McCreary County majority is confident that district courts will adjust preliminary relief if evidence is presented demonstrating "genuine changes in constitutionally significant conditions." Id.

In light of the above and the standards governing injunctive relief, the Court finds that Plaintiffs are not automatically entitled to a permanent injunction. "'An injunction should be narrowly tailored to give only the relief to which plaintiffs are entitled.'" Sharpe v. Cureton, 319 F.3d 259, 273 (6th Cir. 2003)(quoting Brown v. Trustees of Boston Univ., 891 F.2d 337, 361

23

(1st Cir. 1989)).  Plaintiffs' request is too broad because it forbids the posting of the Ten Commandments in public buildings in Rutherford County from now until eternity.  Plaintiffs have not demonstrated that they will suffer irreparable harm if the Court does not permanently enjoin the display because Plaintiffs have not proven that the constitutional violation found by this Court will be ongoing in the future.  To the Court's knowledge, Defendants have complied with the Court's Order to remove the "Foundations" display.  The record does not reveal and the Court is unaware of any subsequent attempts by Defendants to install the same display or a different display in Rutherford County containing the Ten Commandments.

Since the Court's entry of a preliminary injunction in June 2002, Rutherford County has at least six (6) new Commissioners. (Docket Entry Nos. 51, 59 at 5).[11]  Moreover, there is absolutely no evidence before the Court suggesting that Defendants will act again with an unconstitutional purpose in attempting to post the same "Foundations" display or a different display containing the Ten Commandments.  Cf. ACLU of Tenn. v. Monroe County, No. 3:04-CV-48, 2005 WL 3108384 (E.D. Tenn. Nov. 18, 2005)(granting defendants' summary judgment motion and finding that defendants have removed

---

[11]According to a brief filed by Defendants in January 2003, an election had occurred since the filing of this lawsuit, and six new Commissioners had been elected, replacing six of the Commissioners involved in the "Foundations" voting.  (Docket Entry No. 51 at 6). The record does not include any more recent information concerning the composition of the Rutherford County Board of Commissioners.

the challenged Ten Commandments display, officially deemed such removal "permanent," and "plaintiffs' speculation as to the defendants' future conduct is insufficient to justify the continuation" of the litigation). Although decided prior to the Supreme Court's ruling in McCreary County, the Monroe County decision does not conflict with the Supreme Court's ruling, and it supports the denial of the instant Plaintiffs' request for a permanent injunction. Like the plaintiffs in the Monroe County case, Plaintiffs here have offered only "speculation" that Defendants will again post the Ten Commandments in a constitutionally impermissible manner. The Court cannot issue an injunction of the duration and breadth advanced by Plaintiffs based on such speculation.

Importantly, with regard to their request for a permanent injunction, Plaintiffs have not demonstrated success on the merits. See Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998)(finding that when injunctive relief is sought based on a violation of the First Amendment, the likelihood of success on the merits "will often be the determinative factor."). As discussed above, recent decisions issued by the Sixth Circuit and the Supreme Court make clear that governmental entities certainly can post the Ten Commandments in a manner that is constitutionally permissible, and an entity's past actions do not necessarily "forever taint any effort on [its] part to deal with the subject matter." McCreary County, 125 S. Ct. at 2741.

25

Significantly, this Court previously found that the Rutherford County "Foundation" display, in the absence of the Commissions' wholly religious purpose in erecting the display, does not have the primary effect of advancing or endorsing religion. As Defendants have stated, "this Court's preliminary injunction held that Defendants have [erected] a constitutional display but displayed it for the wrong reasons." (Docket Entry No. 51 at 5). The scope and nature of Plaintiffs' requested injunctive relief would forever prohibit Rutherford County from attempting to engage in what could be constitutional conduct. Accordingly, Plaintiffs' request for the entry of a permanent injunction will be denied.

In their Verified Complaint (Docket Entry No. 1), Plaintiffs seek an award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988. If Plaintiffs still desire such an award, they should file the appropriate documents in accordance with the Local Rules of Court for the Court's consideration. Plaintiffs are advised that they should address why, having obtained preliminary but not permanent injunctive relief, they qualify as "prevailing parties" under Section 1988. See e.g., Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville, 421 F.3d 417, 420-21 (6th Cir. 2005)(restating and discussing Sixth Circuit's standards for awarding "prevailing party" status).

**V. CONCLUSION**

Based on the foregoing, Plaintiffs' Motion to Lift Stay of All Proceedings and For an Order Advancing Trial on the Merits on

Plaintiffs' Renewed Motion for Permanent Injunction (Docket Entry No. 53) will be GRANTED. However, Plaintiffs' request for the entry of a permanent injunction will be DENIED.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE